IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BRADLEY MILLHOUSE,              )<br>                                                   )<br>                        Plaintiff,       )<br>                                                   )     No. 2:25-cv-00268-DCN<br>            vs.                                 )<br>                                                   )     **ORDER**<br>JAMCO AMERICA, INC.,          )<br>                                                   )<br>                        Defendant.  )<br>_____)  | |

      The following matter is before the court on defendant Jamco America, Inc.'s ("Jamco") motion to dismiss, ECF No. 4. For the reasons set forth below, the court grants the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  BACKGROUND[1]

### A.  Factual History

      This case arises out of an employment dispute. ECF No. 1-1, Compl. Jamco is a Washington corporation that designs, manufactures, and supplies aircraft interior components for Boeing in Charleston, South Carolina. Id. ¶ 2. While employed at Jamco, plaintiff Bradely Millhouse ("Millhouse") held the title of "Mechanical Assembler 2" and was at all times an at-will employee. Id. ¶ 6. Millhouse alleges that he was wrongfully terminated "after he complained about Jamco's failure to ensure proper procedure was followed." Id. ¶ 7.

---

[1] The allegations in this section are presented in the light most favorable to Millhouse. See Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Clark v. Milam, 152 F.R.D. 66, 71 (S.D.W. Va. 1993).

Millhouse observed that airplane lavatory assemblies contained binding issues. Id. ¶ 12. He documented the issues and communicated them to Jamco engineers. Id. In an email to Millhouse, a Jamco engineer stated that the binding issues should be addressed by the Boeing installation team. Id. ¶ 13.

A few months later, Millhouse was directed by his manager, Will Tidd ("Tidd"), to repair a similar binding issue in a lavatory door assembly by adjusting its nonconforming spacing. Id. ¶¶ 9, 20. Millhouse believed that the nonconformance was the result of improper installation by Boeing earlier in the airplane production process. Id. ¶ 10. In the paperwork provided to him for the repair, Millhouse did not receive Jamco engineering documents. Id. ¶ 16. He was provided with a Boeing power point that contained spacing measurements that did not add up and had not been approved by Jamco. Id. ¶¶ 17, 23.

Millhouse was uncomfortable performing the repair and feared he could become criminally liable for a safety hazard or in-air component malfunction. Id. ¶ 27. He did not believe the work would return the lavatory door assembly to its approved design requirements. Id. ¶ 22. Millhouse emailed his concerns regarding the repair to Tidd on February 26, 2024. Id. ¶ 25. Attached to his email, he included his prior correspondences with Jamco engineers noting their belief that it was Boeing's responsibility to remedy the same binding issue that Millhouse was tasked with repairing. Id. ¶ 12. In response, Tidd stated that Boeing wanted the job completed quickly. Id. ¶ 26. Millhouse refused to repair the lavatory door assembly, and he was terminated by Jamco on February 27, 2024. Id. ¶ 7.

### B. Procedural History

On April 1, 2024, Millhouse filed a complaint against Jamco with the United States Department of Labor ("DOL") Occupational Safety and Health Administration ("OSHA") under the Wendall H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"), 49 U.S.C. § 42121. ECF No. 4-2 at 1–3. At all times during the OSHA proceedings, Milhouse was represented by counsel. Id. at 1. OSHA dismissed Millhouse's AIR21 complaint on October 17, 2024, finding that Jamco "would have taken the same action against [Millhouse] regardless" and that AIR21 does not cover Millhouse's complaint to Tidd because it "did not fall under air safety in accordance with AIR21." Id. at 2. Millhouse did not object to the OSHA findings or request a hearing before an administrative law judge. Id. As a result, the OSHA findings became final. Id.

Millhouse filed a complaint against Jamco in the Charleston County Court of Common Pleas on December 10, 2024. ECF No. 1-1, Compl; Millhouse v. Jamco America, Inc., No. 2024-CP-1006103 (Charleston Cnty. Ct. C.P. Dec. 10, 2024). His complaint asserts a single cause of action for wrongful termination in violation of public policy. Id. ¶¶ 41–48. Jamco removed the action to federal court pursuant to diversity jurisdiction under 28 U.S.C. § 1332 on January 15, 2025. ECF No. 1.

Jamco filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on January 16, 2025. ECF No. 4. Millhouse responded in opposition on January 29, 2025. ECF No. 6. Jamco replied on February 4, 2025. ECF No. 8. The court held hearing on the motion on April 10, 2025. ECF No. 11. As such the motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, Rule 8 requires a complaint to contain: (1) "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Moreover, under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

Jamco moves to dismiss Millhouse's claim for wrongful termination in violation of public policy pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 4.  Jamco argues that Millhouse has failed to state a claim under South Carolina law.[2]  Id. at 4–18.

Under South Carolina law, absent the creation of a specific contract of employment, employment is presumed to be at-will.  Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 778 (S.C. 2010).  "An at-will employee may be terminated at any time for any reason or for no reason, with or without cause."  Id.   However, South Carolina recognizes a public policy exception to the employment at-will doctrine.  See Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985).  "Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises."  Id.  The South Carolina Supreme Court has expressly recognized at least two situations in which an action for wrongful termination in violation of public policy can be maintained: (1) when an employer requires an employee to violate a criminal law as a condition of maintaining

---

[2] The court need not address whether Millhouse has an existing statutory remedy under AIR21.  AIR21 provides a statutory remedy for employees who were retaliated against for providing information to their employer or the federal government "relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States."  49 U.S.C. § 42121(a).  OSHA's findings and dismissal of Millhouse's AIR21 complaint against Jamco became final upon Millhouse's failure to object or request a hearing before an administrative law judge.  ECF No. 4-2 at 1.  Whether Millhouse properly exercised his rights under AIR21 is not before the court.  See ECF Nos. 4, 11.  Moreover, AIR21 does not apply to whistleblowers who inform their employers or the federal government of violations of state law.  See 49 U.S.C. § 42121.  Millhouse's complaint contains only allegations that he believed "Jamco's actions violated state law regarding aviation."  Compl. ¶ 43.

employment, see id. at 214–216, and (2) when the act of terminating an employee is itself in violation of a criminal law, see Culler v. Blue Ridge Elec. Coop., Inc., 422 S.E.2d 91, 92–93 (1992). In Culler v. Blue Ridge, the South Carolina Supreme Court stated that the public policy exception is not necessarily limited to situations involving violations of a criminal statute but rather applies to any "violation of a clear mandate of public policy." 422 S.E.2d at 92.

"The primary source of the declaration of public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration." Barron v. Labor Finders of S.C., 713 S.E.2d 634, 638 (S.C. 2011) (quoting Citizens' Bank v. Heyward, 133 S.E. 709, 713 (S.C. 1925)); see also Greene v. Quest Diagnostics Clinical Labs., Inc., 2006 WL 2864102, at *8 (D.S.C. June 19, 2006) ("[T]he South Carolina Supreme Court has only been willing to recognize as a public policy 'mandate' something tantamount to a judicial or legislative declaration of public policy."). South Carolina courts narrowly interpret the public policy exception and often decline to extend the exception beyond the bounds of Ludwick and Culler. See, e.g., Epps v. Clarendon Cnty., 405 S.E.2d 386, 387 (S.C. 1991) (declining to extend the public policy exception "where . . . the employee has an existing remedy for a discharge which allegedly violates rights other than the right to employment itself"); Antley v. Shepherd, 532 S.E.2d 294, 299 (S.C. 2000) aff'd as modified, 564 S.E.2d 116 (S.C. 2002) (declining to extend the exception where an employee was terminated for refusing to do something he believed would, but did not in fact, violate the law); Miller v. Fairfield Communities, Inc., 382 S.E.2d 16, 19 (S.C. 1989) (declining to extend the exception where an employee was terminated for refusal to act in a manner that could result in civil

6

sanctions). The South Carolina Supreme Court has held that "for purposes of juridical application it may be regarded as well settled that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from the established law of the state, as found in its Constitution, statutes, and judicial decisions." Batchelor v. Am. Health Ins. Co., 107 S.E.2d 36, 38 (S.C. 1959). In South Carolina, courts are advised to "exercise restraint when undertaking the amorphous inquiry of what constitutes public policy." Taghivand v. Rite Aid Corp., 768 S.E.2d 385, 387 (S.C. 2015).

Millhouse alleges that, as a condition of maintaining his employment, Jamco required him to engage in "acts that violate state aviation law" and "acquiesce to Jamco's illegal practices." Compl. ¶¶ 44–45. Further, Millhouse pleaded that he "knew there were laws in South Carolina promoting and requiring aviation safety and that he could be exposed to criminal liability for breaking these state laws or being an accessory to breaking these laws." Id. ¶ 28. Millhouse makes his claim for wrongful termination in violation of public policy under three provisions of the South Carolina State Law for Aeronautics ("SCSLA"): South Carolina Code Sections 55-3-80, 55-3-60, and 55-3-120. Id. ¶¶ 29–34.

Jamco argues that Millhouse cannot state a claim for wrongful termination in violation of public policy under any of the statutory provisions alleged. See ECF No. 4-1 at 7–11. It asserts that the SCSLA is neither applicable to Millhouse nor a criminal law that Millhouse was required to violate. Id.

At the outset, Millhouse does not allege that Jamco's termination of his employment was itself a violation of criminal law. See Compl. Therefore, to state a claim for wrongful termination in violation of public policy, Millhouse must demonstrate

7

that at least one of the statutory provisions of the SCSLA that he cites is either a criminal statute or a clear mandate of public policy under the laws of South Carolina.  See Culler, 422 S.E.2d at 92–93.  Section 55-3-80 provides:

> All crimes, torts, and other wrongs committed by or against an airman or passenger while in flight over this State is governed by the laws of this State. The question of whether damage occasioned by or to an aircraft while in flight over this State constitutes a tort, crime, or other wrong by or against the owner of the aircraft must be determined by the laws of this State.

S.C. Code Ann. § 55-3-80.  The text of Section 55-3-80 only states that South Carolina tort and criminal law governs actions that occur in flight.  See id.

> Section 55-3-60 states:
>
> The owner of an aircraft operated over the land or waters of this State is absolutely liable for injury to persons or property on the land or water beneath the aircraft which is caused by ascent, descent or flight of the aircraft or the dropping or falling of an object from an aircraft, whether the owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured or of the owner or bailee of the property injured.  If the aircraft is leased at the time of the injury to person or property both owner and lessee is liable and they may be sued jointly or either or both of them may be sued separately.  An airman who is not the owner or lessee is liable only for the consequences of his negligence.  The injured person or owner or bailee of the injured property shall have a lien next in priority to the lien for State and county taxes on the aircraft causing the injury to the extent of the damage caused by the aircraft or an object falling from it.  A chattel mortgagee, conditional vendor or trustee under an equipment trust of an aircraft out of possession shall not be considered an owner or lessee within the provisions of this section.  This section shall not apply to damage to airport property that is neither malicious nor intentional, nor shall this section apply to damage to crushable materials, collapsible structures, or aircraft arresting systems that are designed to deform when used.

S.C. Code Ann. § 55-3-60.  Section 55-3-60 codifies the civil liability scheme for injuries to persons or property caused by the operation of aircraft in South Carolina.  See id.; see also Knoester v. Mitsubishi Heavy Indus., Am., Inc., 2005 WL 8162876, at *4 (D.S.C. July 19, 2005) ("A plain reading of [Section 55-3-60] demonstrates that the only persons

8

to whom an owner or lessee of an aircraft would be liable for damages arising out of an aircraft accident are those on the land or water beneath who are injured by the flight of the aircraft.").

Finally, Section 55-3-120 mandates that "[t]his chapter must be interpreted and construed as to effectuate its general purpose of promoting aviation, aeronautics, aviation safety, and conforming and making consistent this State's laws with federal law, and the laws of other states on the subject of aviation and aeronautics." S.C. Code Ann. § 55-3-120. Contained within the definition of "aeronautics" is the act of aircraft construction and repair. S.C. Code Ann. § 55-1-5(a). There is no indication that Section 55-3-120 is a criminal law or that a violation would subject the violator to a criminal penalty or fine. See S.C. Code Ann. § 55-3-120. In the absence of a specific legislative declaration by the South Carolina General Assembly or South Carolina court ruling, it cannot be said that Section 55-3-120 is a clear mandate of public policy under South Carolina law. See Barron, 713 S.E.2d at 638; see also Desmarais v. Sci. Rsch. Corp., 145 F. Supp. 3d 595, 600 (D.S.C. 2015) (stating that "general public policy considerations" do not give rise to a clear mandate of public policy under South Carolina law).

Moreover, South Carolina courts have refused to extend the public policy exception to the at-will employment doctrine to situations in which there is only a good faith belief that the employer required the employee to violate the law. E.g., Antley, 532 S.E.2d at 298 ("We decline to extend the public policy exception to situations where an employee is terminated for refusing to comply with a directive which she simply believes would require her to violate the law."). Millhouse does not plead or allege facts that showed that he violated any South Carolina law. See Compl. Rather, Millhouse alleges

only that he "believed he could face personal criminal liability" and "knew . . . he could be exposed to criminal liability." Id. ¶¶ 28, 43. Consequently, his termination does not create a claim for wrongful termination in violation of public policy.

Because the statutory provisions of the SCSLA on which Millhouse's claim is premised are neither criminal statutes nor clear mandates of public policy under the laws of South Carolina, the court finds that Millhouse has failed to state a claim for wrongful termination in violation of public policy. See Culler, 422 S.E.2d at 92–93. The court declines to extend the public policy exception to the at-will employment doctrine beyond the bounds recognized by the South Carolina General Assembly and South Carolina courts. See Taghivand, 768 S.E.2d at 389.

## IV. CONCLUSION

For the foregoing reasons the court **GRANTS** Jamco's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 25, 2025
Charleston, South Carolina**